# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDITH MAE MAY,

               Plaintiff,

v.

KATHLEEN SUMMERS,

               Defendant.

Case No. 23-CV-1358-JPS

**ORDER**

Plaintiff Edith Mae May ("Plaintiff"), an inmate confined at the Wisconsin Resource Center, filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of her constitutional rights. ECF No. 1. On April 3, 2024, the Court screened Plaintiff's complaint and allowed it to proceed on an Eighth Amendment claim against Defendant Kathleen Summers ("Defendant") and various Doe defendants for their deliberate indifference to Plaintiff's serious medical needs. ECF No. 18 at 8. On March 25, 2025, the Court dismissed the Doe defendants from the case for Plaintiff's failure to timely identify them. ECF No. 53.

Now pending before the Court is Defendant's motion for summary judgment, ECF No. 57, and Plaintiff's partial motion for summary judgment, ECF No. 61. The motions are now fully briefed and ready for disposition. ECF Nos. 58, 64, 66. For the reasons described in detail below, the Court will grant Defendant's motion for summary judgment, will deny Plaintiff's motion for partial summary judgement, and will dismiss this action accordingly.

## 1.    LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2.    FACTUAL BACKGROUND

In compliance with the Court's scheduling order, Defendant submitted joint proposed findings of fact with her motion for summary judgment. ECF No. 59. Plaintiff filed her own disputed facts, ECF No. 62, and Defendant responded to those facts, ECF No. 65. Plaintiff's proposed facts are in the form of a question and are not supported by citations to the record. The Court has reviewed Plaintiff's declaration and accompanying exhibits in an attempt to decipher if material disputed facts exist, ECF No. 63.  As such, the Court takes the following facts from the parties' proposed statements of fact and includes any genuinely disputed facts in the light most favorable to Plaintiff as the non-moving party.

Plaintiff's claims relate to time she spent in the Kenosha County Detention Center, including the Kenosha County Jail (collectively "KCDC"), from March 23, 2023 to April 14, 2023 and additionally from July 26, 2023 to August 21, 2023.[1] During her time at KCDC, Plaintiff knew how to initiate sick calls and submit health service requests and how to submit inmate grievances. While she was confined to KCDC, Plaintiff filed a number of grievances.

After her extended supervision was revoked, Plaintiff was booked into KCDC on January 25, 2023. During her receiving screening, Plaintiff denied being on any current medications. She reported attempting suicide in May 2022 when she was checking her medications and decided to take them all at once. On March 22, 2023, Plaintiff experienced a significant mental health crisis involving self-harm. She sustained a self- inflicted puncture wound to her forearm, necessitating placement in restraints for her safety. Following the incident, she was transferred to a padded room and placed on suicide-watch.

Defendant is an advanced practice nurse prescriber ("APNP"), colloquially known as a "nurse practitioner", and was properly licensed to practice as an APNP at all times relevant to Plaintiff's claims. At the times relevant to Plaintiff's claims, Defendant provided general medical care to inmates at the KCDC; she did not manage the Health Services Unit ("HSU") or supervise the nursing staff or other individuals working at the KCDC. At the times relevant to Plaintiff's claims, Defendant was not acting as the

---

[1]The parties agree that the Eighth Amendment applies to Plaintiff's claims as she was a convicted prisoner at the time in question. ECF No. 59 at 1.

mental health provider at the KCDC and her responsibilities did not include managing patients' mental health medications.

Plaintiff maintains that she has been prescribed Ropinirole for Parkinson's disease since 2005. Plaintiff was seen for the first time by Defendant on March 23, 2023, in relation to an evaluation of Plaintiff's request for bland diet, complaints of RLS, and follow-up on self-harm attempts/arm injuries from the day prior. The other issues were addressed, and Plaintiff's diet was changed. But as it relates to RLS and Ropinirole, Defendant reviewed Surescripts and found Plaintiff had been prescribed Ropinirole in the past; Defendant did not prescribe Plaintiff Ropinirole at that time. Instead, she recommended that Plaintiff "attempt mental alerting activities, moderate exercise prior to bed, abstinence of caffeine, leg massage." On April 5, 2023, Plaintiff sent a medical request seeking Ropinirole and complained she could not sleep and was suffering from lack of RLS medication. On April 5, 2023, Defendant responded to Plaintiff's request for Ropinirole by noting that Plaintiff was already taking Melatonin, Venlafaxine, and Lithium. Defendant noted that these medications depress the central nervous system, and while Plaintiff may have been taking Ropinirole in the community, it would not be appropriate with her current medication regimen. Defendant ended the note by indicating all this was discussed with Plaintiff on March 23, 2023.

Defendant assessed Plaintiff again on April 12, 2023 in relation to the RLS and medication issue. Plaintiff reported she could not sleep at all at night and that she slept all day long, even with Melatonin. Plaintiff was educated that with her new Lithium order, Ropinirole is contraindicated. She was further counseled that Lithium should help with sleep at night as

it is commonly associated with drowsiness. Defendant noted that Plaintiff was sitting without restlessness and was not fidgeting in clinic and that Plaintiff presented as being alert, wide eyed, without eye redness or bags under eyes, and without yawning or sluggishness noted. Because both Lithium and Ropinirole are sedative medications, she indicated Plaintiff "may not have both." Plaintiff then requested her Lithium be discontinued and was advised to speak with a mental health professional for this request as mental health status is crucial, and Plaintiff was stabilized on Lithium. Defendant further noted that "medical provider cannot adjust the patient's mental health medications." Defendant recommended Plaintiff work on sleep hygiene strategies to adjust her circadian rhythm and to stay awake throughout the day and avoid napping. Plaintiff had reported that while she has trouble sleeping at night due to her RLS, she did not have the same difficulty sleeping during the day. Defendant instructed Plaintiff to avoid use of the tablets prior to attempting to sleep at night and to increase physical activity throughout the day and avoid caffeine. The note concluded by indicating there was "no indication for Ropinirole at this time."

Between April 14, 2023 and July 26, 2023, Plaintiff was sent to Taycheedah Correctional Institution to receive counseling and therapy. On or around July 26, 2023, Plaintiff transferred back to KCDC. Plaintiff maintains that she arrived at KCDC with a supply of the Ropinirole; however, Defendant has not been able to identify documentation indicating the Ropinirole was sent with Plaintiff when she transferred back to KCDC from Taycheedah. After Plaintiff transferred back to KCDC on July 27, 2023, she underwent a receiving screening and was physically assessed by a non-

defendant nurse. Plaintiff's vitals were obtained and within normal limits; her blood pressure was 127 over 75. Following her receiving screening, Plaintiff was referred for a mental health evaluation and placed on suicide watch due to behaviors and self-harm statements she allegedly made to agents while being transported to KCDC.

On July 29, 2023, Plaintiff filed the one grievance applicable to the claims she is pursuing in this lawsuit. The grievance stated that she takes "Parkinson's medication for restless leg syndrome everyday" and that she has not received her medication, Ropinirole. Around 9:00 a.m. on August 2, 2023, Plaintiff was seen by a non-defendant psychiatric nurse practitioner for a follow-up appointment and denied experiencing any mental health issues at the time. Plaintiff reported her sleep was "not good" (that she slept two to three hours per night), and she complained of difficulty with falling asleep and napping throughout the day. As of the time of the appointment, Plaintiff's current medications were noted to be: acetaminophen, desvenlafaxine 50 mg QAM, fexofenadine, melatonin 5 mg QPM, meloxicam, omeprazole, and vitamin D. Plaintiff's diagnoses at the end of this appointment were: narcissistic personality disorder, borderline personality disorder, major depressive disorder, recurrent, in remission, unspecified. This non-defendant psychiatric nurse practitioner discontinued Plaintiff's desvenlafaxine, per Plaintiff's request, and educated Plaintiff on her sleep hygiene by recommending she limit napping throughout the day.

On August 2, 2023, Defendant assessed Plaintiff in the hallway outside of her dorm in relation to the RLS medication issue, in conjunction with a mental health exam performed by another clinician and in relation

to complaints of right wrist pain. Plaintiff alleged that she fell and injured her wrist because she could not sleep without her RLS medication, and she fell due to exhaustion and sleep deprivation. Plaintiff alleged she had not slept since returning to KCDC and that she fell three times as a result. Defendant documented that Plaintiff was up and fully alert; her eyes were wide open; there were no dark circles under eyes and no yawing; and she had no difficulty ambulating a straight path. Defendant also documented at this appointment that Plaintiff reported her restless legs were fine because "when I'm off my meds for 4-5 days or so it stops." Plaintiff clarified that her falling down in the middle of walking/standing is due to not being able to sleep since being off her RLS medication. Plaintiff was requesting Ropinirole and trazadone to treat her RLS and sleep issues. Defendant recommended that Plaintiff continue with her current medications (which did not include Ropinirole or trazadone). Defendant also referred Plaintiff for an x-ray on her wrist. Defendant did not prescribe Ropinirole or trazadone (a sleeping medication) to Plaintiff because of Plaintiff's low blood pressure at this appointment, coupled with Plaintiff's reports of falling and syncopal episodes. Defendant believed these medications would increase Plaintiff's fall risk. Defendant referred Plaintiff to mental health to review medications because Plaintiff reported falling on the current regiment.

On August 19, 2023, Plaintiff sent a medical request seeking Ropinirole to treat her Parkinson's disease. She further indicated that her medicine has been refused but she needed it to fall asleep, and she had been up for three days. She also indicated she had fallen three times from passing

out due to exhaustion and that she had reported her falls, but the guards did not document the same. She requested to be seen.

On August 21, 2023, Plaintiff was seen at sick call by Defendant. Plaintiff continued to express the same complaints concerning her RLS. Plaintiff was noted to have a history of abusing prescription medications. Defendant noted Plaintiff had no diagnosis for Parkinson's disease and that Plaintiff denied seeing a neurologist for RLS or sleep issues, but stated that Ropinirole is typically given by her ER doctors. Defendant completed a chart review and documented her belief that Plaintiff's medication history is indicative of abusing prescription medications, which was also included on Plaintiff's transfer summary. Specifically, Defendant noted Plaintiff's history from July to September 2022 of multiple Ropinirole orders by multiple ER Doctors, with overlapping prescription dates, indicative of medication abuse related to this specific medication.

Defendant also noted Plaintiff's behaviors of presenting in clinic, initially calm and cooperative then becoming argumentative when unable to provide a history of her purported Parkinson's disease, in demanding Ropinirole. Plaintiff was again noted to be alert and oriented, with no bags under her eyes and no yawning or unsteadiness noted. Defendant also did not find any indication of a Parkinson's diagnosis. Defendant declined to order the Ropinirole and advised Plaintiff to continue with melatonin for sleep assistance. Defendant interpreted these behaviors as being indicative of prescription medication abuse; Plaintiff states she informed Defendant that she had obtained her medications from the ER during the aforementioned period, because she had no insurance and could not afford to see a neurologist for her Ropinirole prescription.

Plaintiff was seen by a non-defendant psych provider on August 31, 2023. During that visit, the provider noted that Plaintiff had reported taking Ropinirole for Parkinson's and was upset it was not being provided to her at KCDC. That provider also declined to prescribe Plaintiff Ropinirole, instead counseling her to take her psych meds as prescribed and counseled her on medication options and proper sleep hygiene. Plaintiff continued to insist on receiving Ropinirole, and stated she did not want to take her Lithium medication because it reacted badly to everything and made her physically ill. While this provider prescribed Plaintiff a new anti-anxiety med and a new anti- depressant, she did not prescribe Ropinirole. Instead, she counseled Plaintiff on sleep hygiene and positive coping and relaxation skills. On October 2, 2023, another provider started Plaintiff on Ropinirole.

3.    ANALYSIS

Defendant brings a motion for summary judgment seeking dismissal of the Eighth Amendment claim for her alleged indifference to Plaintiff's serious medical need. ECF No. 58 at 1. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendant's motion for summary judgment on the merits and will dismiss this case.[2]

To prove that Defendant violated her rights under the Eighth Amendment, Plaintiff must present evidence establishing that she suffered from "'an objectively serious medical condition'" and that Defendant was "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v.*

---

[2]Defendant argues that Plaintiff did not exhaust her administrative remedies as to a portion of the claim for the time period of January to April 2023. ECF No. 58 at 6. The Court does not address this argument because it finds that Plaintiff's entire claim fails on the merits and should be dismissed with prejudice.

*Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct her own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v.*

*Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendant's motion for summary judgment, Plaintiff must present evidence showing the treatment she received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' [her] condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting*, 839 F.3d at 662. The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties,* 836 F.3d at 730–31. Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

Defendant briefly asserts that Plaintiff's condition does not qualify as an objectively serious medical condition. ECF No. 58 at 9. There is little factual development on this issue, however, and for the purposes of this Order the Court will therefore assume, without definitively ruling, that Plaintiff suffered from an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard.

Next, Defendant argues that she was not deliberately indifferent to Plaintiff's medical needs. The Court begins with the well-established rule that when considering claims of deliberate indifference, the Court must give deference to a medical professional's judgment regarding treatment decisions. "A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood,* 512 F.3d 886, 894–95

(7th Cir. 2008) (quoting *Collignon*, 163 F.3d at 988). Disagreement between a prisoner and her doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson*, 433 F.3d at 1013. Federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising her professional judgment. *Roe*, 631 F.3d at 857; *Sain*, 512 F.3d at 895. "But deference does *not* mean that a defendant automatically escapes liability any time he invokes professional judgment as the basis for a treatment decision. When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe [her] proffered medical explanation, summary judgment is unwarranted." *Zaya*, 836 F.3d at 805 (emphasis in original).

Here, Defendant saw Plaintiff on numerous occasions and provided treatment for her various health issues. The record shows that Defendant addressed Plaintiff's concerns and made a cognizant choice not to prescribe Ropinirole at the time based on her professional opinion. Defendant provided specific reasons for not prescribing this medication based on concerns for Plaintiff's overall health. Other medical professionals agreed with Defendant's decision about Ropinirole at the relevant time. Although Plaintiff disagreed with the treatment she received and its effectiveness, this is insufficient to meet the high burden of deliberate indifference. Plaintiff has provided no evidence to show that 'no minimally competent professional would have so responded under those circumstances.'" *See Sain*, 512 F.3d at 894–95. Even if Plaintiff is correct that Defendant should

have prescribed her the Ropinirole sooner, negligence is insufficient to meet the high deliberate indifference standard.

Plaintiff's failure to submit evidence in support of her opposition to summary judgment has proved detrimental to her case. The facts in the record demonstrate, at best, that Defendant was negligent in failing to provide Plaintiff her requested medication. Deliberate indifference requires "[s]omething more than negligence or even malpractice." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "'[D]eliberate indifference' is a synonym for 'intentional or reckless conduct,' and 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Enge v. Obaisi*, No. 13 C 5154, 2016 WL 1359368, at *2 (N.D. Ill. Apr. 6, 2016) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). The Court cannot draw this inference based on the facts present here. The fact that another medical provider later prescribed Ropinirole is insufficient on its own to meet the high deliberate indifference standard. *See Johnson*, 433 F.3d at 1013. On this record, the Court finds that no reasonable juror could find that Defendant was deliberately indifferent to Plaintiff's medical needs. The Court will accordingly grant Defendant's motion for summary judgment on the merits.

**4. CONCLUSION**

For the reasons explained above, the Court grants Defendant's motion for summary judgment as to the Eighth Amendment claim on the merits. Plaintiff's motion for partial summary judgment will therefore be denied as moot. No claims remain and the Court will accordingly dismiss this action.

Accordingly,

**IT IS ORDERED** that Defendant Kathleen Summer's motion for summary judgment, ECF No. 57, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claim against Defendant Kathleen Summers be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment, ECF No. 61, be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of May, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.